IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARRION QUITEN HOLMES,
    Plaintiff,

vs.                                    Case No.:  3:18cv1381/RV/EMT

STATE OF FLORIDA, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Marrion Quiten Holmes ("Holmes"), proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1).  The matter is now before the court on Plaintiff's Second Amended Complaint (ECF No. 10).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by Holmes, it is the opinion of the undersigned that this case should be dismissed.

I.      BACKGROUND

Holmes was an inmate of the Walton County Jail when he commenced this case on May 21, 2018 (*see* ECF No. 1). At that time, Holmes was facing criminal charges in the Circuit Court for Walton County, Florida, Case No. 2017-CF-000973, specifically, one count of sexual assault (with no physical force or violence) (Count 1), one count of false imprisonment (Count 2), and one count of battery domestic violence (Count 3) (*see id.* at 5–6, 8–11).[1] *See* State v. Holmes, Case No. 2017-CF-000973, Information, Nov. 21, 2017.[2] Holmes was additionally facing charges in Case No. 2018-CF-000087, specifically, one count of battery (Count 1) and three counts of felony battery or domestic battery by strangulation (Counts 2–4). *See* State v. Holmes, Case No. 2018-CF-000087, Information, Feb. 27, 2018.

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

[2] The court takes judicial notice of information available on the database maintained by the Clerk of Court for Walton County, Florida. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

Case No.: 3:18cv1381/RV/EMT

On June 12, 2018, Holmes was convicted by a jury, in Case No. 2018-CF-000087, of third degree felony battery as to Count 3 (one of the felony battery or domestic battery by strangulation counts). The jury acquitted him of a second count of felony battery or domestic battery by strangulation (Count 2), and the prosecutor dismissed the third count of felony battery or domestic battery by strangulation (Count 4). Holmes entered a no contest plea to a misdemeanor charge as to Count 1. On July 17, 2018, the court sentenced Holmes to 24 months in state prison on Count 3, with jail credit of 234 days, and time served on Count 1.

Also on July 17, 2018, Holmes entered a plea to the false imprisonment and battery counts (Counts 2 and 3) in Case No. 2017-CF-000973. The state court adjudicated him guilty of those counts and dismissed the sexual assault count (Count 1). The court sentenced Holmes to 24 months in prison, with jail credit of 234 days, on Count 2, and time served on Count 3. The court ordered the 24-month sentence to run concurrently with the 24-month sentence imposed in Case No. 2018-CF-000087.

On July 20, 2018, Holmes filed the Second Amended Complaint in this case, which is the operative pleading (ECF No. 10). Holmes lists four Defendants on the first page of the pleading: State of Florida, Walton County Sheriff's Office, Walton County Circuit Court, and Patricia Cox (*id.*). Holmes identifies only two Defendants in the "Defendants" section of the Second Amended Complaint, the Walton County

Circuit Court and Mathew J. Richardson, the assistant state attorney who prosecuted Holmes' criminal cases (*id.* at 2). Holmes alleges that on July 13, 2018, his defense attorney reviewed his sentencing score sheet in Case No. 2018-CF-000087, and told him he "scored out" to a sentence of jail time or probation (*id.* at 5–7, attachment). Holmes alleges his attorney reviewed the PSI with him, and pointed out that Patricia Cox (the victim in both of Holmes' criminal cases), did not wish to comment regarding either case (*id.*). Holmes alleges his attorney also told him he had no choice but to accept the State's plea offer in Case No. 2017-CF-000973, because he would lose at trial, even though Ms. Cox had provided a written statement stating that Holmes did not rape her or hold against her will (*id.*). Holmes alleges Ms. Cox showed up at the sentencing hearing (Holmes was sentenced in both cases at the hearing on July 17, 2018), and requested that the court impose the maximum sentence (*id.*). Holmes alleges Cox's comments seemed rehearsed, and it appeared that she had been forced to speak at sentencing (*id.*). Holmes alleges the sentences imposed by the court were "racially motivated" and discriminatory (*id.*). He alleges during his many court dates, he witnessed numerous Caucasian defendants, with similar charges and more serious criminal histories, receive less severe sentences than he received (*id.*).

Holmes claims that the conduct of the state court judge and the prosecutor during his criminal proceedings was racially motivated (ECF No. 10 at 9). Holmes

claims that their conduct violated his constitutional rights to due process, privacy, and equal protection, and that his sentence constituted cruel and unusual punishment (*id.*). Holmes cites provisions of the federal Constitution and the Florida Constitution in support of his claims (*id.*). Holmes requests that he be re-sentenced by a different judge to a sentence within the range set forth in his sentencing guidelines score sheet (*id.*). Holmes also requests punitive damages and compensatory damages for mental anguish and "loss of dignity" (*id.*).

## II.    DISCUSSION

The court is statutorily required to review the Second Amended Complaint to determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Id. at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. In civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the

allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

    A.    Claims for Injunctive Relief

The state criminal proceedings against Holmes have concluded in the trial court, and he is now in the custody of the Florida Department of Corrections (see ECF No. 11). The docket in Case No. 2018-CF-000087 indicates that Holmes filed a notice of appeal on August 2, 2018, and the direct appeal is pending in the state appellate court. Insofar as Holmes seeks an order requiring the state trial court to re-sentence him, the Second Amended Complaint is subject to dismissal because the Younger abstention doctrine bars this federal court from considering Holmes' claim for injunctive relief.

Pursuant to Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and Samuels v. Mackell, 401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971), federal courts should abstain from granting injunctive or declaratory relief affecting a state criminal prosecution absent a showing of: (1) evidence of bad faith prosecution, (2) irreparable injury if abstention is exercised by the federal court, or (3) the absence of an adequate alternative state forum where the constitutional issues can be raised. Hughes v. Attorney Gen. of Fla., 377 F.3d 1258, 1263 (11th Cir. 2004) (citing Younger, 401 U.S. at 45, 53–54). Subsequent decisions have refined Younger

to state that the exceptions occur only when the prosecution is brought expressly to harass the defendant or otherwise in bad faith, or when the statute under which the defendant is charged is clearly and flagrantly unconstitutional. *See* Trainor v. Hernandez, 431 U.S. 434, 447, 97 S. Ct. 1911, 52 L. Ed. 2d 486 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592, 611, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975); The News-Journal Corp. v. Foxman, 939 F.2d 1499, 1507–09 (11th Cir. 1991); Redner v. Citrus Cnty., 919 F.2d 646, 650 (11th Cir. 1990).

With respect to the "irreparable injury" component of the Younger doctrine, irreparable injury does not include injury which is incidental to every prosecution brought lawfully and in good faith. *See* Kugler v. Helfant, 421 U.S. 117, 123–25, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975) (citing Younger, 401 U.S. at 46). Irreparable injury exists if the statute under which a defendant is being prosecuted is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" or if unusual circumstances exist that would call for equitable relief. Younger, 401 U.S. at 53–54 (citing Watson v. Buck, 313 U.S. 387, 402, 61 S. Ct. 962, 85 L. Ed. 1416 (1941)). The Eleventh Circuit has emphasized the narrowness of the irreparable injury exception to the Younger doctrine. *See, e.g.*, Butler v. Ala. Inquiry Comm'n, 245 F.3d 1257, 1265 (11th Cir. 2001) ("Also, while we today make no

decision about the constitutionality of Alabama's judicial canons, we doubt that Canon 7(B)(2) patently or fragrantly violates the Constitution 'in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'") (citation omitted); Kolski v. Watkins, 544 F.2d 762, 766 (5th Cir. 1977) ("The statute in this case, challenged as facially unconstitutional by the Petitioner, is certainly of questionable validity. But we certainly cannot say at this stage that this statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' As in Younger, 'the possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good-faith attempts to enforce it . . . '") (citations omitted).[3]

Here, resolving Holmes' constitutional challenges to his sentence would significantly interfere with the pending state criminal proceeding. Furthermore, none of the exceptions to the Younger doctrine appear to apply. Moreover, there is an adequate state forum in which Holmes may present his constitutional claims. Because it appears from the face of the Second Amended Complaint that the Younger abstention doctrine bars this court from interfering in the state court criminal

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Case No.: 3:18cv1381/RV/EMT

proceedings, any claims for injunctive relief (including Holmes' request that this court require the state criminal court to re-sentence him) must be dismissed.

### B. Claims for Monetary Damages

Holmes' claims for monetary damages against the state court judge who sentenced him, The Honorable Kelvin C. Wells (*see* ECF No. 10 at 5–8), are barred by the doctrine of judicial immunity. *See* Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citing Mitchell v. Forsyth, 472 U.S. 511, 526–27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980). This immunity is retained even if it is alleged that the judge allegedly conspired with other parties to bring about a deprivation of another's rights. *See* Dykes v. Hosemann, 776 F.2d 942, 946 (11th Cir. 1985) (en banc) (citations omitted). Immunity may be overcome only (1) where the judge has not acted within his judicial capacity or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. *See* Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11; Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

Whether an act by a judge is a "judicial" one relates to the nature of the act itself (i.e., whether it is a function normally performed by a judge), and to the expectations of the parties (i.e., whether the parties dealt with the judge in his judicial capacity. *See* Mireles, 502 U.S. at 11 (citing Stump, 435 U.S. at 362); *see also* Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996). The relevant inquiry is the "nature" and "function" of the act, not the "act itself." Mireles, 502 U.S. at 13 (citing Stump, 435 U.S. at 362). In other words, the court must look to the particular act's relation to a general function normally performed by a judge.

A judge is not deprived of absolute immunity from liability for damages because an action he took was in error, was illegal, was done maliciously, or was in excess of his authority. *See* Stump, 435 U.S. at 355–57; *see also* Mireles, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice). Rather, a judge is subject to liability only when he acted in clear absence of all jurisdiction, and knew or must have known that he was acting in such a manner. *See* Simmons, 86 F.3d at 1084–85 (citing Stump, 435 U.S. at 356–57). An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which he presides. Dykes, 776 F.2d at 946-47 (citations omitted). The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and

determine a matter, not the manner, method, or correctness of the exercise of that power." 48A C.J.S. Judges § 86. Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly. Stump, 435 U.S. at 357. Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction). The proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded his jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. Stump, 435 U.S. at 357 (quotation omitted).

In the instant case, the conduct of which Holmes complains is Judge Wells' allegedly imposing a more severe sentence based upon Holmes' race. Imposing sentence is a function normally performed by a judge. Furthermore, as Holmes was a party in the case over which Judge Wells presided, he dealt with Judge Wells in Wells' judicial capacity. Moreover, Holmes does not allege, nor do the facts suggest, that Judge Wells acted in the complete absence of all jurisdiction. Therefore, Judge Wells is immune from civil liability.

Along similar lines, Holmes' claims against Assistant State Attorney Richardson are subject to dismissal under the doctrine of prosecutorial immunity. In

Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), the Supreme Court considered whether traditional common-law immunities for prosecutors, which derived from immunities recognized for judges, applied to civil cases brought under 42 U.S.C. § 1983.  The Supreme Court concluded that they did.  *Id.*, 424 U.S. at 427–28 (citation omitted).  The Court has explained that the common law gives absolute immunity in § 1983 actions for activities that are "'intimately associated with the judicial phase of the criminal process.'"  Van de Kamp v. Goldstein, 555 U.S. 335, 341, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009) (quoting Imbler, 424 U.S. at 430); *accord* Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).

"[A] functional approach has evolved to determine whether executive branch public officials should be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials."  Jones, 174 F.3d at 1282. This functional approach looks to the nature of the function performed, not to the identity of the person who performed it.  *See* Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993).  Under this functional analysis, executive branch officials are entitled to absolute immunity for certain functions intimately associated with the judicial process.  Van de Kamp, 555 U.S. at 343.

Case No.:  3:18cv1381/RV/EMT

Subsequent Supreme Court decisions established outer bounds on what activities qualify for prosecutorial immunity and to which individuals it applies. Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. *See* Imbler, 424 U.S. at 431. A prosecutor is immune for malicious prosecution. *See* Malley v. Briggs, 475 U.S. 335, 342–43, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing. *See* Burns v. Reed, 500 U.S. 478, 490–92, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991); Kalina v. Fletcher, 522 U.S. 118, 126, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).

Applying these principles, the Eleventh Circuit has emphasized that, "[a] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." Jones, 174 F.3d at 1281. Such absolute immunity "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* (quotation marks omitted); *accord* Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002). Prosecutors have absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless

detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate . . . complaints about the prison system, [and] threatening . . . further criminal prosecutions . . . ." Hart v. Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009) (quotation marks and citations omitted).

Here the conduct of Assistant State Attorney Richardson of which Holmes complains (i.e., Richardson's filing and proceeding on the charges, engaging in plea negotiations, presenting witnesses at sentencing, and requesting a particular sentence) concerned Richardson's function as an advocate for the State of Florida. Therefore, Richardson is entitled to prosecutorial immunity from Holmes' § 1983 claims.

To the extent Holmes seeks to sue Patricia Cox, she is not subject to liability under § 1983, because she is not a state actor. Section 1983 of Title 42 of the United States Code provides for the recovery of monetary damages for an alleged violation of a right secured by the Constitution or other federal laws; however, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing

Parratt). A private party generally does not act under color of state law and is therefore not subject to suit under section 1983. *See* Dennis v. Sparks, 449 U.S. 24, 27–29, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).

Here, Holmes' factual allegations do not suggest the presence of any of the rare circumstances under which Ms. Cox may be deemed a state actor for purposes of § 1983. Therefore, Ms. Cox is not subject to liability under § 1983.

To the extent Holmes seeks to sue the State of Florida, his claims for monetary damages are barred by the Eleventh Amendment. The Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. *See* Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment bars Holmes' claims for monetary damages against the State of Florida.

To the extent Holmes seeks to sue the Walton County Sheriff's Office, his claims are subject to dismissal for failure to state a claim upon which relief may be

granted. Holmes' factual allegations do not plausibly suggest that the Sheriff's Office or any officer from that agency deprived him of a federal right. Therefore, any claims against the Sheriff's Office should be dismissed.

### C. State Law Claims

Finally, to the extent Holmes asserts state law claims, they should be dismissed without prejudice to his pursuing them in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. *See* Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state law claim asserted by Holmes should be dismissed to permit him to pursue it in a more appropriate forum. While it would be convenient for Holmes to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants supports retaining jurisdiction of Holmes' state claim(s) and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Artis v. District of Columbia, — U.S. —,138 S. Ct. 594, 199 L. Ed. 2d 473 (2018). Thus, Holmes' state law claims are tolled while they are pending in federal court, and he has 30 days after dismissal by the federal court to re-file in state court. *See* Artis, *supra*; Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011). Holmes' pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims for injunctive relief be **DISMISSED without prejudice** pursuant to Younger v. Harris, 401 U.S. 37 (1971);

2. That Plaintiff's federal claims for monetary damages be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted and for seeking monetary relief against a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii);

3. That Plaintiff's state law claims be **DISMISSED without prejudice**; and

4. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 9th day of October 2018.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

# NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**